# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DARRELL BERRY, ET AL.**                          **CIVIL ACTION**

**VERSUS**                                          **NO. 22-889-JWD-RLB**

**WELLS FARGO BANK, N.A., ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on July 26, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DARRELL BERRY, ET AL.**                              CIVIL ACTION

**VERSUS**                                            NO. 22-889-JWD-RLB

**WELLS FARGO BANK, N.A., ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion to Remand (R. Doc. 32). The motion is opposed. (R. Docs. 49, 50, 54). Plaintiffs filed a Reply. (R. Doc. 57).

Also before the Court are Dean Morris, LLC and Candace A. Courteau's Motion to Dismiss (R. Doc. 13), Wells Fargo Bank, N.A.'s Motion to Dismiss (R. Doc. 40), Fay Servicing LLC, Caliber Home Loans, Inc., US Bank Trust National Association Solely as Trustee for LSF10 Master Participation Trust, and LSF10 Holdings, LLC's Motion to Dismiss, or Alternatively, Motion for More Definite Statement (R. Doc. 42), and Specialized Loan Servicing, LLC's Motion to Dismiss (R. Doc. 46).[1] The motions are opposed. (R. Docs. 69, 70, 71). Certain defendants have filed reply memoranda. (R. Docs. 78, 79).

Also before the Court is Plaintiffs' Motion for Preliminary/Permanent Injunction. (R. Doc. 63). The motion is opposed. (R. Docs. 72, 73, 75, 81). Plaintiffs filed reply memoranda. (R. Docs. 82, 83).

Finally, Plaintiff also filed a document titled "Judicial Notice Promissory Note Not Authentic," which is not associated with any particular motion. (R. Doc. 85).[2]

---

[1] In addition to its Motion to Dismiss, SLS filed a "Disclaimer of Interest" asserting it does not service the mortgage and holds no interest in the Loan or the Property. (R. Doc. 43).

[2] To the extent this filing is supplemental briefing, it will not be considered given that it was filed after the Court informed the parties that no further briefing would be accepted on the instant motions. (*See* R. Doc. 84).

## I.     Background

This action arises out of Darrell Barry and Constance Lafayette's (collectively,

"Plaintiffs") default on a promissory note and mortgage securing their home in 8338 Greenmoss

Drive, Baton Rouge, Louisiana 70806 (the "Property"). Wells Fargo Bank, N.A. ("Wells Fargo")

initiated a Louisiana executory proceeding seeking the seizure and sale of the Property by filing

a Petition to Enforce Security Interest by Executory Process ("Executory Proceeding"). *See*

*Wells Fargo Bank, N.A. vs. Darrell Kendrick Berry and Constance Lafayette Berry*, 19th Judicial

District Court (Docket No. C-656991). On April 13, 2017, the state court issued an order

authorizing the Sheriff to seize and sell the Property ("Foreclosure Judgment").[3] (R. Doc. 51-1 at

28-29).

After issuance of the writ of seizure and sale, Plaintiffs initiated a separate civil action in

the 19th Judicial District Court (Docket No. C-672792), which was removed to this district on

October 5, 2018. *See Berry, et al. v. Loancity, et al.*, No. 18-888-JWD-SDJ (M.D. La.) [*Berry I*].

In that lawsuit, Plaintiffs sued LoanCity, Wells Fargo, Federal Home Loan Mortgage

Corporation ("Freddie Mac"), Freddie Mac Multiclass Certificates, Series 3113 Trust, Mortgage

Electronic Registration System ("MERS"), and Does 1-100, seeking the following relief: lack of

standing/wrongful foreclosure; unconscionable contract; breach of contract against

LoanCity/MERS; breach of fiduciary duty; quiet title; slander of title; injunctive relief; and

declaratory relief. *Berry I*, ECF No. 1-2 at 51-63. Plaintiffs alleged that on December 27, 2005,

they executed a promissory note on the Property, which was secured by a mortgage in the

amount of $184,000, and that the "Original Lender" of this promissory note and mortgage

---

[3] This order is allowed in a Louisiana executory proceeding under Louisiana Code of Civil Procedure article 2638 ("Order for issuance of writ of seizure and sale"). The Fifth Circuit has used the term "foreclosure judgment" to characterize such an order. *See, e.g., Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013) (using term "foreclosure judgment"); *Berry v. Wells Fargo Bank, N.A.*, No. 20-30670, 2022 WL 728969 (5th Cir. Mar. 10, 2022) (same).

(recorded on January 4, 2006) was LoanCity, with MERS serving as nominee. *Id.* at 51, 55. Plaintiffs alleged that the promissory note was "sold, transferred, assigned and securitized into the Freddie Mac Multiclass Certificates, Series 3113 with an issue date of February 27, 2006," but MERS did not record any assignment of the Deed of Trust. *Id.* at 56. Plaintiffs then alleged that on November 13, 2012, MERS, as nominee for LoanCity, "attempted" to assign the mortgage to Wells Fargo. *Id.* at 56.[4] In short, the Petition in *Berry I* alleged that Wells Fargo lacked authority to enforce the mortgage due to an improper securitization and subsequent assignment from LoanCity. *Berry v. Wells Fargo Bank, N.A.*, No. 20-30670, 2022 WL 728969, at *1 (5th Cir. Mar. 10, 2022) (unpublished).[5]

After dismissing their claims, the district judge provided Plaintiffs the opportunity to amend their pleading. Plaintiffs ultimately filed a largely duplicative amended pleading, in which they further alleged that "(1) Wells Fargo falsely told the district court that it had not foreclosed on the relevant property; and (2) the mortgage note had been cancelled, making the note an absolute nullity and any subsequent conveyance fraudulent." *Berry*, 2022 WL 728969, at *1; *see Berry I*, ECF No. 71. In that Amended Petition, Plaintiffs asserted for the first time that, contrary to their allegations in their initial Petition, Equifirst was in fact the "Original Lender" of the promissory note and mortgage, with LoanCity giving a "purported refinance of original note under the Mortgage." *Berry*, 489 F. Supp. 3d at 441, 451 (M.D. La. 2020).

In *Berry I*, the district judge specifically addressed Plaintiffs' new claims based on this alleged conveyance of the cancelled Equifirst mortgage:

> The Court notes that with regard to this new allegation that Defendants transferred a cancelled mortgage, Plaintiffs make copious allegations of various types of

---

[4] On March 19, 2018, after the Petition in *Berry I* was filed, Wells Fargo assigned its interest in the Mortgage to SLS. (R. Doc. 37 at 2).

[5] Under 5th Circuit Rule 47.5.4, unpunished opinions "are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)."

> fraud, again seemingly trying to see what, if anything, will stick. Plaintiffs'
> diverse and multiple claims for different types of fraud, all of which are
> unfounded, suggest to the Court that Plaintiffs are simply making frivolous
> accusations rather than considered, legitimate arguments. However, in an
> abundance of caution, the Court will address each type alleged, in turn, below.

*Berry*, 489 F. Supp. 3d at 451. The district judge then rejected all legal theories based on fraud

raised with respect to the alleged fraudulent issuance of the promissory note and mortgage by

LoanCity, including theories of wire fraud under 18 U.S.C. § 1343, mortgage fraud under La.

R.S. 14:71.3, fraudulent conveyance under La. R.S. 22:2021, and general fraud. *Id.* at 451-454.

Importantly, however, the pleadings in *Berry I* did not address the Executory Proceeding,

attach the Foreclosure Judgment, or expressly seek relief regarding the Foreclosure Judgment.

Instead, the *Berry I* pleadings sought the following declaratory relief:

- A declaration "that Defendants and [their] successors lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and/or to sell the subject properties"; and

- A declaration "that the Mortgage is not a lien against the subject properties, ordering the immediate release of the Mortgage of record, and quieting title to the subject properties in Plaintiff and against Defendants and all claiming by, through or under them."

*Berry I*, ECF No. 1-2 at 62; ECF No. 71 at 31. Moreover, the pleadings sought a refund of

"wrongfully or improperly collected fees and payments," interest, attorney's fees, monetary

relief between $100,000 and $9 billion, and any other awardable relief. *Id.*

In *Berry I*, the district judge dismissed all of Plaintiffs' claims. *Berry v. LoanCity*, No.

18-888, 2019 WL 2870849 (M.D. La. July 3, 2019),[6] *on reconsideration in part*, 2019 WL

5783418 (M.D. La. Nov. 6, 2019)[7]; *Berry v. LoanCity*, No. 18-888, 2019 WL 4455998 (M.D. La.

Aug. 30, 2019),[8] *report and recommendation adopted*, 2019 WL 4451210 (M.D. La. Sept. 17,

---

[6] *Berry I*, ECF No. 39.
[7] *Berry I*, ECF No. 68.
[8] *Berry I*, ECF No. 49.

2019)[9]; *Berry v. LoanCity*, 489 F. Supp. 3d 441 (M.D. La. 2020)[10]; *Berry v. LoanCity*, No. 18-888, 2021 WL 136399 (M.D. La. Jan. 13, 2021).[11] The Fifth Circuit affirmed the district judge's dismissals. *See Berry*, 2022 WL 728969, *petition for certiorari denied*, 2023 WL 3803962 (U.S. June 5, 2023).

On or about October 7, 2022—approximately seven months after the Fifth Circuit issued its ruling affirming the dismissals in *Berry I*—Plaintiffs initiated this second civil action in 19th Judicial District Court, East Baton Rouge Parish, Louisiana (Docket No. C-724405) [*Berry II*]. (*See generally* R. Doc. 51). Plaintiffs filed an "Original Petition" (R. Doc. 51-1 at 3-25, "Petition"), fourteen exhibits (R. Doc. 51-1 at 26-67),[12] an Affidavit in support of the pleadings and exhibits (R. Doc. 51-2 at 1-3), a separate "Verified Emergency Petition for Preliminary/Permanent Injunction, and Declaratory Relief" (R. Doc. 51-2 at 4-17),[13] and other documents (*see* R. Docs. 51-3 through 51-8).

 On October 11, 2022, the state court judge set a hearing on the sought injunctive relief to take place on November 21, 2022. (R. Doc. 51-2 at 17). On October 14, 2022, Plaintiffs sought and obtained from the state court judge a stay of the Executory Proceedings (Docket No. C-656991). (R. Doc. 51-6).

In the Original Petition, Plaintiffs name the following as defendants: Wells Fargo; MERS, LLC ("MERS"); Caliber Home Loans, Inc. ("Caliber"), Fay Servicing, LLC ("Fay Servicing"), LSF10 Mortgage Holdings, LLC ("LSF10"), U.S. Bank Trust National Association as Trustee for LSF10 Master Participation Trust ("U.S. Bank"); Specialized Loan Servicing LLC

---

[9] *Berry I*, ECF No. 58.
[10] *Berry I*, ECF No. 116.
[11] *Berry I*, ECF No. 139.
[12] The first exhibit attached to the Petition is the Foreclosure Judgment. (*See* R. Doc. 51-1 at 28-29).
[13] The Court interprets this filing as a separate motion for injunctive relief, not a second pleading. The Court will discuss whether any injunctive or declaratory relief is merited in the context of addressing the Petition and the separate Motion for Preliminary Injunction (R. Doc. 63) filed after removal.

("SLS"); Candace A. Courteau ("Courteau"); and Dean Morris LLC ("Dean Morris") (collectively, "Defendants"). Plaintiffs again allege (as they did in the Amended Petition in *Berry I*) that the named defendants have no right to foreclose on the Property because they have no legal interest in the Mortgage or Note. (Petition ¶¶ 30-39). Plaintiffs specifically allege that they originally purchased the Property through a promissory note and mortgage issued by Equifirst on October 31, 2002, which was cancelled and not assigned, sold, or transferred to LoanCity, which, on December 27, 2005, "issued a non-compliant loan because according to the evidence it is not a refinance of the Equifirst original note and mortgage." (Petition ¶ 31). Plaintiffs bring causes of action for lack of standing/wrongful foreclosure, breach of fiduciary duty, quiet title, unconscionability of contract, injunctive relief, declaratory judgment, unfair and deceptive practices in unauthorized collections, abandoned executory process claims, unfair and deceptive consumer practices with respect to loan servicing, and fraud. (Petition ¶¶ 40-86).

Plaintiffs have named two defendants from the *Berry I* action: Wells Fargo and MERS. "In addition to naming the foreclosing creditor, the Petition names the mortgage servicing companies that serviced the loan at some point during its history, as well as the Trust as a holder of the mortgage." (R. Doc. 42-1 at 3). Plaintiffs name as a defendant SLS, which was assigned the loan by Wells Fargo in 2018 according to the record in *Berry I*. In an attachment to the Petition, Plaintiffs allege that SLS assigned the loan to Caliber in 2018, which transferred it to Fay Serving in 2021. (R. Doc. 49 at 44 ). Plaintiffs also name as defendants the attorney representing the creditor in the Executory Proceeding (Courteau) and her law firm (Dean Morris).

Unlike in the pleadings in *Berry I*, however, Plaintiffs now allege facts with respect to the Executory Proceeding, attach the Foreclosure Judgment, and expressly seek declaratory and injunctive relief with respect to the Foreclosure Judgment:

- A declaration that "the transactions [that are] the subject of this action are illegal and are deemed void; *that the foreclosure which was instituted be deemed and declared illegal and void* and that further proceedings in connection with the foreclosure be enjoined";

- A permanent injunction of "Defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to Plaintiffs' title to the property; *and to set aside the Order for Seizure of Mortgage and Writ of Seizure and to Enjoin the Sheriff form proceeding with the sale of Plaintiffs' home currently set to be sold at auction on October 19, 2022 under Order/Judgment granted in C-656991*";

- A declaration that Defendants "lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and/or to sell the subject property"; and

- A declaration "that the Mortgage is not a lien against the subject properties, ordering the immediate release of the Mortgage, and quieting title to the subject property in Plaintiffs and against Defendants and all claiming by, through or under them."

(Petition ¶¶ 89-92) (emphasis added). Moreover, the pleadings seek a refund of "wrongfully or improperly collected fees and payments," interest, and any other awardable relief. (Petition ¶ 93).

On November 14, 2022, SLS removed this action asserting the Court can exercise diversity jurisdiction under 28 U.S.C. § 1332. (R. Doc. 1). SLS asserts there is complete diversity because Plaintiffs are citizens of Louisiana, Wells Fargo is a citizen of South Dakota, LSF10 is a citizen of New York and Delaware, MERS is a citizen of Delaware and Virginia; SLS is a citizen of Colorado, U.S. Bank is a citizen of Delaware; Caliber is a citizen of Delaware and Texas, and Fay Servicing is a citizen of Florida. (R. Doc. 1 at 4-5). SLS acknowledges that Dean Morris and Courteau are non-diverse citizens of Louisiana, but nevertheless asserts that the citizenship of these defendants must be ignored because they were improperly joined given that Plaintiffs have not asserted a viable claim against these defendants. (R. Doc. 1 at 5-7). SLS further asserts that the amount in controversy is facially apparent. (R. Doc. 1 at 8). Finally, SLS asserts that the consent of LSF10 or MERS is unnecessary because they have been improperly joined as

defendants or they are nominal parties. (R. Doc. 1 at 9). SLS did not attach the state court pleadings to the removal.[14]

The defendants Courteau, Dean Morris, Wells Fargo, Fay Servicing, Caliber, LSF10, and U.S. Bank timely consented to removal. (R. Docs. 2, 3, 16, 20, 28, 35, 38).

Plaintiffs have filed a Motion to Remand, which raises issues pertaining to the Court's subject matter jurisdiction and alleged procedural defects to removal. (R. Doc. 32). Plaintiffs seek remand of this action for the following reasons: (1) lack of subject matter jurisdiction in light of the *Rooker-Feldman* doctrine; (2) lack of diversity jurisdiction under 28 U.S.C. § 1332 in light of the addition of the non-diverse defendants Dean Morris and Courteau; (3) the procedural defect of failure to attach a copy of all process, pleadings, and orders served upon" the removing defendant prior to removal as required by 28 U.S.C. § 1446(a); and (4) the procedural defect of lack of timely consent to removal by LSF10 and MERS as required under 28 U.S.C. § 1446(b)(2)(A). (R. Doc. 32).

All of the named defendants (with the exception of MERS, which has not made an appearance) have filed motions to dismiss the claims brought against them with prejudice. (R. Docs. 13, 40, 42, 46). Collectively, the Defendants argue that Plaintiffs have failed to state a claim, arguing, among other things, that Plaintiffs' claims are barred by res judicata and that the promissory note and mortgage that are the basis for the Foreclosure Judgment were issued to LoanCity and were not otherwise improperly transferred with respect to the loan issued by Equifirst.

Plaintiffs have since filed a separate motion seeking the issuance of injunctive and declaratory relief. (R. Doc. 63).

---

[14] SLS supplied these documents to the Court on December 27, 2022, the same day SLS filed its opposition to the instant Motion to Remand. (R. Doc. 48). On December 28, 2022, SLS filed an "amended" index of the state court record. (R. Doc. 51).

## II.    Law and Analysis

### A.    Pro Se Litigants

*Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). Furthermore, a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curia). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with relevant rules of procedural and substantive law." *NCO Fin. Systems, Inc. v. Harper–Horsley*, No. 07-4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson*, 999 F.2d at 100 (citation omitted).

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* Finally, a *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *NCO Fin. Systems*, 2008 WL 2277843, at *3 (citing *Birl*, 660 F.2d at 593).

### B.    Plaintiffs' Motion to Remand (R. Doc. 32)

#### 1.    The *Rooker-Feldman* Doctrine

Generally, a defendant may remove a civil state court action to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v.*

*Henson*, 537 U.S. 28, 34 (2002). The burden is on the removing party to show "[t]hat federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002). When determining whether federal jurisdiction exists, courts consider "[t]he claims in the state court petition as they existed at the time of removal." *Id* . (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). Removal statutes should be strictly construed, and any doubt as to whether removal is appropriate should be resolved in favor of remand. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

"[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (citing *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). Specifically, the *Rooker-Feldman* doctrine bars federal district courts from "modify[ing] or revers[ing] state court judgments." *Truong v. Bank of America, N.A*., 717 F.3d 377, 382 (5th Cir. 2013). This is called the *Rooker-Feldman* doctrine after the cases that first recognized it: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-17 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). The *Rooker-Feldman* doctrine is applicable to foreclosure actions removed on the basis of diversity jurisdiction. *Bollingham v. Ocwen Loan Servicing, LLC*, No. 19-155, 2020 WL 963421, at *2 n.1 (M.D. La. Feb. 12, 2020), *report and recommendation adopted*, 2020 WL 967340 (M.D. La. Feb. 27, 2020) (citing *Morris v. Wells Fargo Bank*, 677 Fed. App'x 955, 957 (5th Cir. 2017) (vacating the district court's dismissal and ordering the district court to remand the action to the appropriate state court).

The *Rooker-Feldman* doctrine is narrow and "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005). "One hallmark of the

*Rooker–Feldman* inquiry is what the federal court is being asked to review and reject." *Truong*, 717 F.3d at 382 (citing *Exxon Mobil*, 544 U.S. at 284). In short, a federal district court lacks jurisdiction "over challenges to *state court decisions in particular cases* arising out of *judicial proceedings.*" *Feldman*, 460 U.S. at 486 (emphasis added); *see Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) ("A state court judgment is attacked for purposes of *Rooker–Feldman* when the federal claims are "inextricably intertwined" with a challenged state court judgment, or where the losing party in a state court action seeks what in substance would be appellate review of the state judgment.") (punctuation and citations removed).

"The second hallmark of the *Rooker–Feldman* inquiry is the source of the federal plaintiff's alleged injury." *Truong*, 717 F.3d at 382 (citing *Exxon Mobil*, 544 U.S. at 284). "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Truong*, 717 F.3d at 382-83 (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003); *see also Weaver*, 660 F.3d at 904 ("[T]he Rooker–Feldman doctrine generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment."); *Morris v. Am. Home Mortg. Servicing, Inc.,* 443 Fed. App'x 22, 24 (5th Cir. 2011) (federal plaintiff's claim that a foreclosure judgment is unlawful is barred "because he is complaining of injuries caused by the state court judgments").

In *Truong*, the Fifth Circuit clarified the application of the *Rooker-Feldman* doctrine in the context of a Louisiana wrongful foreclosure action by addressing whether the doctrine applied to a complaint alleging that two banks "(1) misled the state court into thinking that the executory process evidence was authentic when, in fact, it was not; and (2) misled [the plaintiff]

11

into foregoing her opportunity to dispute authenticity in the state-court proceedings." *Truong*, 717 F.3d at 383. The Fifth Circuit held that the *Rooker-Feldman* doctrine did not apply to these two "independent claims" because the plaintiff "did not seek to overturn the state-court judgment, and the damages she requested were for injuries caused by the banks' actions, not injuries arising from the foreclosure judgment." *Id*. The Fifth Circuit specifically noted that the plaintiff did not file "an injunction proceeding" under Louisiana Code of Civil Procedure Article 2751, "whereby a mortgagor can challenge the authenticity of evidence supporting the use of executory process, and thus potentially arrest the seizure and sale of her property." *Id*. at 380.

The *Truong* decision further clarified, however, that there is "no general rule that *any* claim that relies on a fraud allegation is an 'independent claim' for *Rooker–Feldman* purposes." *Id*. at n.3. The Fifth Circuit expressly distinguished cases in which the plaintiffs directly challenged the validity of a state foreclosure judgment. *Id*. (citing *Magor v. GMAC Mortgage, L.L.C.,* 456 Fed. App'x 334, 336 (5th Cir. 2011) (*Rooker–Feldman* bars a claim that a state foreclosure judgment was procured through fraud because "reversal of the state court's foreclosure judgment would be a necessary part of the relief requested") and *United States v. Shepherd*, 23 F.3d 923, 924-25 (5th Cir. 1994) (*Rooker–Feldman* prohibits a district court from voiding state foreclosure judgments, notwithstanding claims that the judgments were fraudulently procured)).

Here, Plaintiffs expressly rely on the *Truong* decision in support of their argument that remand is appropriate because they are "seeking damages from defendants that flow from and before the foreclosure which they are now seeking to have vacated and set aside." (R. Doc. 32 at 4). In opposing remand based on the *Rooker-Feldman* doctrine, SLS relies solely on the Fifth Circuit's unpublished decision in *Berry I*. (R. Doc. 49 at 4) (citing *Berry*, 2022 WL 728969, at *3). Without addressing the allegations in the Petition in this action, SLS argues that the *Rooker-*

*Feldman* doctrines does not apply because there is "no foreclosure to address" and Plaintiffs are still in possession of the Property. (R. Doc. 49 at 4).

Having considered and compared the pleadings in *Berry I* and *Berry II*, and having reviewed the applicable law, the Court concludes that this action is subject to remand to state court for lack of subject matter jurisdiction under the *Rooker-Felder* doctrine.[15]

Unlike in *Berry I*, the Petition in this action expressly pleads that "Wells Fargo, on April 11, 2017 filed for and obtained a Petition for Executory Process and a Notice of Seizure issue for the sheriff to seize and sell the property through the use of a note that was an absolute nullity." (Petition ¶ 27). Plaintiffs specifically allege that the Foreclosure Judgment was "granted in error" and seek an order recognizing that the Foreclosure Judgment is void and should be set aside. (Petition ¶¶ 31, 89). Plaintiffs expressly seek an injunction pursuant to Louisiana Code of Civil Procedure Articles 2642 and 2752. (Petition ¶ 27; *see* R. Doc. 51-2 at 4-16). Plaintiffs also expressly incorporate by reference the Foreclosure Judgment into their pleading. (Petition ¶ 16; *see* R. Doc. 51-1 at 28-29).

This action is part and parcel to the Louisiana procedure for seeking invalidation of a foreclosure judgment issued in a Louisiana executory proceeding. "An executory proceeding in Louisiana is an *in rem* action derived from the civil law; it provides a simple, expeditious, and inexpensive procedure by which creditors may seize and sell property upon which they enjoy a mortgage or privilege." *Walter Mortg. Co., LLC v. Turner*, 210 So. 3d 425, 432-33 (La. App. 2d Cir. 2016). "Executory process, entitling a creditor to seize the debtor's property without citation or the usual delays or formal judgment, is regarded as a harsh remedy, requiring for its use a strict compliance by the creditor with the letter of the law." *First Guar. Bank, Hammond, La. v.*

---

[15] This Report and Recommendation continues to the merits of the remaining pending motions to the extent the district judge disagrees with the following analysis of the *Rooker-Feldman* doctrine.

*Baton Rouge Petroleum Ctr., Inc.*, 529 So. 2d 834, 840 (La. 1987). "Defenses and procedural objections to an executory proceeding may be asserted either through an <u>injunction proceeding</u> to arrest the seizure and sale as provided in Articles 2751 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both." La. Code Civ. Proc. art. 2642 (emphasis added).[16] "The defendant in the executory proceeding may arrest the seizure and sale of the property <u>by injunction</u> when the debt secured by the security interest, mortgage, or privilege is extinguished, or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed." La. Code Civ. Proc. art. 2751 (emphasis added). "<u>The petition for injunction shall be filed in the court where the executory proceeding is pending</u>, either in the executory proceeding or <u>in a separate suit</u>." La. Code Civ. Proc. art. 2752 (emphasis added).

Here, Plaintiffs have filed an injunction proceeding in state court, as allowed under the Louisiana Code of Civil Procedure, to challenge the validity of the Foreclosure Judgment and the pending seizure and sale of the Property. Unlike in *Truong*, the claims in the Petition are not "independent claims" to the extent Plaintiffs are specifically seeking to overturn the state Foreclosure Judgment through an authorized injunction proceeding. *Truong*, 717 F.3d at 380-383. The *Rooker-Feldman* doctrine precludes the exercise of subject-matter jurisdiction where a plaintiff seeks to set aside a state foreclosure judgment ordering the seizure and sale of property. *See*, *e.g.*, *Flores v. Citizens State Bank of Roma, Texas*, 132 F.3d 1457 (5th Cir. 1997) ("The sole purpose of this action is to review the state court's foreclosure and seizure of property pursuant to the related writ of execution and, therefore, cannot be reviewed in federal court."); *Morris v.*

---

[16] Defendants note that Plaintiffs did not file a suspensive appeal allowed by Article 2642, which they state must be taken within 15 days of the signing of the order directing executory process. (R. Doc. 42-1 at 9; R. Doc. 46-1 at 3; *see* R Doc. 13-1 at 2; R. Doc. 40-1 at 2). Defendants further acknowledge, however, that Plaintiffs are seeking injunctive relief pursuant to Article 2751. (R. Doc. 42-1 at 13, R. Doc. 46-1 at 12-13; *see* R. Doc. 13-1 at 10-11; R. Doc. 40-1 at 15-16).

*Am. Home Mortg. Servicing, Inc.,* 443 Fed. App'x 22, 24 (5th Cir. 2011) (federal plaintiff's claim that a foreclosure judgment is unlawful is barred "because he is complaining of injuries caused by the state court judgments"); *Morris v. Wells Fargo Bank*, 677 F. App'x 955, 958 (5th Cir. 2017) (instructing district court to remand action to state court because the district court lacked subject matter jurisdiction given that the plaintiff was complaining of injuries caused by a state court judgment); *Kenner v. SunTrust Mortg., Inc.*, No. 12-17, 2012 WL 2880551, at *2 (E.D. La. July 13, 2012) ("It is clear from Plaintiffs' state court petition that the main objective of this action is to invalidate the state foreclosure proceedings. This Court, however, does not have jurisdiction to review state court judgments.") (citing *Magor*, 456 Fed. App'x 334); *Carter v. Deutche Bank Nat. Tr. Co.*, No. 10-797, 2010 WL 3074323, at *2 (E.D. La. Aug. 2, 2010) ("Carter asks the Court to vacate the state court's judgment ordering the seizure and sale of her property. The Court, however, lacks jurisdiction . . . to review state-court judgments); *Weatherspoon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-98, 2017 WL 2486363, at *4 (M.D. La. May 19, 2017), *report and recommendation adopted sub nom. Weatherspoon v. JPMorgan Chase Bank*, 2017 WL 2485226 (M.D. La. June 8, 2017) (the *Rooker-Feldman* doctrine applied where the plaintiff specifically sought to have the seizure and sale of property rescinded, annulled, or invalidated); *see also Alverson v. Wells Fargo Bank, N.A.*, No. 18-0123, 2018 WL 2234896, at *7 (D.N.M. May 16, 2018) ("*Rooker-Feldman* also applies here because the state court judgment is inextricably intertwined with the relief sought by Plaintiff. To be sure, issuing a permanent injunction that prevents Defendant from enforcing the foreclosure judgment, vacating the foreclosure judgment, or awarding restitution to Plaintiff to compensate for the state court judgment against him would each effectively overturn the foreclosure judgment."), *report and recommendation adopted*, 2018 WL 2441156 (D.N.M. May 31, 2018).

In short, the instant proceeding, which seeks injunctive relief regarding the Foreclosure Judgment, is part and parcel to the executory process proceeding under Louisiana law. To be clear, Plaintiffs initiated this action in state court under the state court procedures for seeking relief from a foreclosure judgment in an executory process proceeding. This is not an original federal action in which a plaintiff seeks relief outside of the state executory proceeding procedures. *See Alphonse v. Arch Bay Holdings, L.L.C.*, 548 F. App'x 979, 980 (5th Cir. 2013) (in reversing dismissal under the *Rooker-Feldman* doctrine of the plaintiff's claims brought under the Louisiana Unfair Trade Practices Act (LUPTA), the Fifth Circuit noted that "[i]mportantly for this appeal, Alphonse did not intervene and object in the executory proceedings in state court, nor did he appeal the judgment. Instead, Alphonse filed the instant federal action . . . .");[17] *see also Truong*, 717 F.3d at 380 (noting that the *Rooker-Feldman* doctrine did not apply where the plaintiffs did not seek to arrest the seizure and sale of her property by filing "an injunction proceeding" under Louisiana Code of Civil Procedure Article 2751); *Brooks v. Flagstar Bank, FSB*, No. 11-67, 2011 WL 2710026, at *8 (E.D. La. July 12, 2011) (dismissing claims against Courteau and Dena Morris in original federal action based on the *Rooker-Feldman* doctrine under Rule 12(b)(1) to the extent the "plaintiffs' claims would require the Court to review the state court judgment ordering issuance of the writ of seizure and sale, or are inextricably intertwined with that judgment," but separately dismissing the remaining claims under Rule 12(b)(6)).

---

[17] In an earlier ruling in the action, the district court dismissed claims directly seeking review of the state court foreclosure judgment. *See Alphonse v. Arch Bay Holdings, LLC,* No. 12-330, 2012 WL 3096033, at *2 (E.D. La. July 30, 2012) (dismissing claims against defendants, including SLS, seeking review of a state court judgment ordering a writ of seizure and sale of property under the *Rooker-Feldman* doctrine where the claims were "inextricably intertwined" with the state court foreclosure proceeding where a "thorough review of the state court foreclosure proceedings" would be required, but allowing plaintiff to proceed on FDCPA and LUPTA claims).

In opposing remand based on the *Rooker-Feldman* doctrine, SLS solely relies on the Fifth

Circuit's unpublished opinion in *Berry I*. In that decision, the Fifth Circuit briefly addressed

*Rooker-Feldman*, which was raised on appeal, as follows:

> Appellants' third argument—that the *Rooker-Feldman* doctrine precludes federal
> court jurisdiction—also fails. *Rooker-Feldman* bars a federal district court from
> modifying or reversing a state court judgment. *Union Planters Bank Nat. Ass'n v.
> Salih*, 369 F.3d 457, 462 (5th Cir. 2004). Appellants assert that *Rooker-Feldman*
> applies because this action is a "wrongful foreclosure lawsuit" challenging a
> previously issued "foreclosure judgment" in state court. But, as the district court
> noted, <u>Appellants failed to allege that Wells Fargo, or any other party, has
> foreclosed on their property</u>. So at this juncture, there is no foreclosure to address,
> rendering the claimed state court ruling inapposite and making *Rooker-Feldman*
> inapplicable.

*Berry*, 2022 WL 728969, at *3 (emphasis added). The decision notes, among other things, (1)

that while Wells Fargo initiated foreclosure proceedings, it assigned the loan to SLS (who was

not a party in *Berry I*) prior to the seizure and sale of the Property; (2) the Foreclosure Judgment

was not in the record on appeal;  and (3) nothing in the record suggested that Plaintiffs lacked

possession of their home. *Id*. n. 4.

The foregoing result in *Berry I* is distinguishable. In this action: (1) SLS is a party to the

lawsuit, (2) the Foreclosure Judgment has been incorporated into the pleadings; and (3) the

Petition clearly seeks to enjoin the sale of the Property pursuant to the Foreclosure Judgment.

Given that Plaintiffs are seeking a declaration that the Foreclosure Judgment is void, it is unclear

what relevance there is as to the undisputed fact that Plaintiffs remain in possession of their

property.[18] At any rate, the Petition forming the basis of removal in *Berry I* did not expressly

state that the Plaintiffs were seeking injunctive relief with respect to a foreclosure judgment

pursuant to Louisiana Code of Civil Procedure Article 2752. Given the procedural posture of this

---

[18] It appears that this portion of *Berry I* is dicta.

action, the Court finds it of no event that the Property has not yet been seized and sold given the nature of Louisiana's executory process.[19]

In sum, the *Rooker-Feldman* doctrine precludes an exercise of subject matter jurisdiction in this action. If the district judge agrees with this analysis, then Plaintiffs' Motion to Remand should be granted without the need for any further analysis. If the district judge disagrees with the foregoing analysis of the *Rooker-Feldman* doctrine, however, it is proper, as discussed below, to exercise diversity jurisdiction in this action and deny Plaintiff's Motion to Remand.[20]

### 2.    **Improper Joinder**

As stated above, generally defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1).[21] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253

---

[19] By stating that "there is still no foreclosure to address" in this action, SLS appears to equate the term "foreclosure" in the context of a civil law executory process proceeding with the actual seizure and sale of the underlying property in furtherance of an order of seizure and sale (i.e., a foreclosure judgment). The term "foreclosure" does not appear to be defined in Louisiana's executory process statutes. Black's Law Dictionary defines foreclosure, however, as the underlying <u>proceeding</u> in which seizure and sale of property is the relief sought: "A legal proceeding to terminate a mortgagor's interest in property, instituted by the lender (the mortgagee) either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." *Foreclosure*, Black's Law Dictionary (11th ed. 2019).

[20] Plaintiffs assert, in passing, that they are also seeking remand based on *Younger* abstention. But *Younger* abstention is inapplicable where there is, as here, no ongoing state court action given that this proceeding was removed in its entirety. *See Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Absent any *pending* proceeding in state tribunals," applying "*Younger* abstention was clearly erroneous."); *see also Village of DePue v. Exxon Mobile Corp.*, 537 F.3d 775, 783 (7th Cir. 2008) ("Removal under 28 U.S.C. § 1441 simply does not leave behind a pending state proceeding that would permit *Younger* abstention."). Given that Louisiana procedure allows an executory proceeding to be challenged through an entirely separate suit, *See* La. Code Civ. Proc. art. 2752, it follows that this separate suit is part and parcel to the original executory proceeding.

[21] There can be no dispute that the amount in controversy requirement is satisfied given Plaintiffs' allegations in the Petition regarding the alleged value of the Property and the secured loan.

18

(5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed . . ."). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). The removing party has the burden of proving federal diversity jurisdiction. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003). To meet its burden, the removing party must show an "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis*, 326 F.3d at 646-47. As the removing defendant has not alleged actual fraud in Plaintiffs' pleading of jurisdictional facts, the Court will only consider the latter test for improper joinder. In that situation, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004).

Generally, a court should "conduct a Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. However, where a plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether a non-diverse defendant has been improperly joined. *Id.* The summary inquiry is appropriate only to identify discrete and undisputed facts:

> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Id*. As examples of "discrete and undisputed facts" that could be identified through jurisdictional discovery, the Fifth Circuit offered: "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Id*. at 574 n.12. Although the court may consider "summary judgment-type evidence in the record," it must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

"[A] court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016). If a court determines that the non-diverse party has been improperly joined under a Rule 12(b)(6)-type analysis, that party must be dismissed without prejudice. *Id*. at 209. This dismissal is based on lack of subject matter jurisdiction and does not operate as an adjudication on the merits. *Id*. at 210. When applying the improper joinder test, a federal court reads the original state court pleading through the lens of the federal pleading standards. *Id*. at 203.

20

When conducting a Rule 12(b)(6)-type analysis, the Court must determine whether the plaintiff has plead "enough facts to state a claim to relief that is plausible on its face." *Int'l Energy Ventures*, 818 F.3d at 200 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. The Court may take judicial notice of public records while conducting this 12(b)(6)-type analysis. *See Viking Constr. Grp., LLC et al. v. Satterfield & Pontikes Constr. Grp., et al*., No 17-12838, 2018 WL 398751, at *4 n.18 (E.D. La. Jan. 12, 2018); *Rantz v. Shield Coat, Inc*., No. 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017).

There is no dispute that Courteau, the attorney representing the creditor in the Executory Proceeding, and her law firm Dean Morris, are non-diverse defendants. Accordingly, their presence destroys complete diversity unless they were improperly joined as defendants to this litigation. SLS argues that "Plaintiffs have failed to state how any of their causes of action apply" to these defendants "as the foreclosure attorneys, as an attorney owes no duty to a non-client third party absent a showing of actual malice or specific intent to harm." (R. Doc. 49 at 5) (citing cases). SLS also relies more generally on Dean Morris and Courteau's Motion to Dismiss (R. Doc. 13) in support of a finding of improper joinder. (*See* R. Doc. 49 at n.16).

Having reviewed the Petition and the arguments set forth by the parties, the Court concludes that Plaintiffs have failed to state a claim against the non-diverse defendants Dean Morris and Courteau. In short, Plaintiffs have not plead (and cannot establish) that Dean Morris

and Courteau owed Plaintiffs any duty under Louisiana law. "Louisiana law recognizes that an attorney's paramount duty is, and must be, to his client." *Scheffler v. Adams & Reese, LLP*, 950 So. 2d 641, 651 (La. 2007) (citing *Penalber v. Blount*, 550 So. 2d 577, 581 (La. 1989)). Louisiana "has adopted the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting on his client's behalf." *Scheffler*, 950 So. 2d at 952 (citing *Penalber*, 550 So.2d at 581. A plaintiff may bring an intentional tort action against an adversary's counsel, however, where the petition alleges " facts showing specific malice or an intent to harm on the part of the attorney in persuading his client to initiate and continue the suit." *Montalvo v. Sondes*, 637 So. 2d 127, 130 (La. 1994).

Plaintiffs' allegations in the Petition with respect to the Dean Morris and Courteau are grounded on the theory that they submitted various "erroneous filings" in the Executory Proceeding in support of their clients. Plaintiffs sum up their theory of recovery as follows:

> Dean Morris and Candace Courteau are joined properly as their numerous negligent and erroneous filings has caused much stress and harm to the Berrys resulting in them having to defend against numerous foreclosure filings. Multiple times Dean Morris and Candace Courteau have filed documents in 19th JDC without providing those same documents to the Berrys and telling the Sheriff of East Baton Rouge Parish that "service is not necessary". Their addition to this case is critical.

(R. Doc. 57 at 11). Plaintiffs do not demonstrate that they have specifically pled that the Dean Morris and Courteau acted with specific malice or an intent to harm them, as opposed to simply representing the interests of their clients. At most, Plaintiffs suggest that Dean Morris and Courteau's "oath of office" creates their duty to Plaintiffs, further suggesting that they breached this duty by failing to submit an "authentic" copy of the promissory note and "not advising their clients of the defective paperwork [which] contributed to the issuance of the order to conduct a wrongful seizure." (R. Doc. 69 at 10). Again, the duty of these defendants are to their clients, not Plaintiffs.

22

Having considered these arguments, as well as having reviewed the allegations in the Petition, the Court concludes that Plaintiffs have not raised any non-conclusory allegations that Dean Morris and Courteau committed an international tort with specific malice or an intent to harm the Plaintiffs. Even if accepted as true, Plaintiffs' allegations with respect to Dean Morris and Courteau amount to claims that they were negligent in carrying out their professional duties on behalf of their clients. Accordingly, these non-diverse defendants were improperly joined as defendants. *See Morshaeuser v. Citimortgage, Inc.*, No. 12-2210, 2012 WL 5289383, at *9 (E.D. La. Oct. 24, 2012) ("The plaintiffs' state court petition does not contain sufficient factual assertions, accepted as true, to state a claim for relief that is plausible on its face. Even assuming for the sake of argument that Jackson & McPherson run a 'foreclosure mill,' causing them to carelessly fulfill their duties to their many clients and, even assuming Ms. Raymond violated Rule 3.7 and La. C.C.P. art. 863, and otherwise negligently carried out her professional duties in representing Citi in the foreclosure proceedings, the plaintiffs cannot recover from Raymond or Jackson & McPherson because a non-client quite clearly under the law cannot recover for the negligent conduct of its adversary's counsel."); *Foreman v. Auto Club Family Ins. Co.*, No. 06-6418, 2007 WL 38365, at *3 (E.D. La. Jan. 4, 2007) (finding improper joinder of defendants' attorney where the plaintiff raised the conclusory allegation that the attorney violated a "duty . . . to deal in good faith and in honesty" with plaintiffs, but did not substantiate this duty with any legal authority and the court found no independent duty owed by an attorney to his clients' opponent); *see also Brooks*, 2011 WL 2710026, at *8 (dismissing claims for breach of duty of good faith and fair dealing and negligence brought against Dean Morris and Courteau because there was no such duty to a client's adversary under Louisiana law and there was no allegation of any specific contract between Dean Morris or Courteau and the plaintiffs).

In short, the Petition does not raise any specific factual allegations with respect to Dean Morris and Courteau that they breached a duty based on actual malice or specific intent to harm. There is no allegation of an attorney-client relationship or privity of contract between Plaintiffs and Dean Morris and Courteau. Based on the allegations in the Petition, the Court concludes that, pursuant to a Rule 12(b)(6)-like analysis, Plaintiffs have not alleged a claim against these non-diverse defendants. While it appears that the foregoing analysis is sufficient for a finding that Dean Morris and Courteau were improperly joined as defendants for the purposes of all causes of action (which are merely variations on the theme that these foreclosure attorneys improperly submitted documents on behalf of their clients in the Executory Proceeding), the Court also incorporates by reference the discussion of the individual claims on the merits below to the extent applicable to these non-diverse defendants.

Accordingly, it is proper to exercise diversity jurisdiction notwithstanding the presence of Dean Morris and Courteau as non-diverse defendants. The Motion to Dismiss filed by these defendants, however, seeks dismissal of all claims against Dean Morris and Courteau with prejudice. (*See* R. Doc. 13-1 at 15). While the Court has considered the arguments raised in their Motion to Dismiss, the ultimate dismissal of Dean Morris and Courteau must be without prejudice because it is based on lack of subject matter jurisdiction and does not operate as an adjudication on the merits. *Int'l Energy Ventures*, 818 F.3d 193, 209-10. Only if Dean Morris and Courteau are dismissed without prejudice can the Court exercise diversity jurisdiction and reach the merits of the claims raised by the remaining parties.

In sum, Dean Morris and Courteau's Motion to Dismiss (R. Doc. 13) should be granted insofar as it seeks dismissal of the claims brought against these non-diverse defendants without prejudice.

### 3.    Procedural Defects

Plaintiffs also raise two alleged procedural defects in support of their Motion to Remand. First, Plaintiffs argue that the Notice of Removal does not comply with 28 U.S.C. § 1446(a) because it was not accompanied by "a copy of all process, pleadings, and orders served upon" SLS, the removing defendant, in state court prior to removal. (R. Doc. 32 at 1-2, 5). Second, Plaintiffs argue that there is a lack of unanimity in violation of 28 U.S.C. § 1446(b)(2)(A) because not "all defendants who have been properly joined and served" prior to removal (namely MERS, LSF10, and U.S. Bank) joined in or consented to removal of the action. (R. Doc. 32 at 6). These procedural defects were timely raised within 30 days after the filing of the Notice of Removal. *See* 28 U.S.C. § 1447(c).

### a.    The State Court Record

SLS failed to include <u>any</u> of the state court record—including the underlying Petition, motion for injunctive relief, or service of process—as attachments to the Notice of Removal. (*See* R. Doc. 1). SLS acknowledges its error, characterizing it as a "de minimis procedural oversight" that is curable and does not warrant remand. (R. Doc. 49 at 2). SLS argues that the Court should excuse this procedural defect given that 28 U.S.C. 1447(b) allows a Court to "require the removing party to file with its clerk copies of all records and proceedings in such State court or may cause the same to be brought before it by writ of certiorari to such State court." (R. Doc. 49 at 2-3). SLS further relies on a Fifth Circuit decision standing for the proposition that the removing defendants' failure to submit "a copy of all process, pleadings and orders served" on that removing defendant in a Notice of Removal is procedural, not jurisdictional, and can therefore be cured. *See Covington v. Indem. Ins. Co. of N. Am.*, 251 F.2d 930 (5th Cir. 1958).

The *Covington* decision does not, however, address whether a timely motion to remand based on such a procedural defect (filed prior to the correction of the procedural defect by supplementation of the record) should result in remand. Indeed, district courts have recognized that "the plaintiff in *Covington* did not seek to remand that case to state court based on [the] technical defect in the Notice of Removal within the time allowed." *Tri-Co Oil Co., Inc. v. Great Am. Ins. Co.*, No. 09-1576, 2010 WL 11615036, at *5 (N.D. Ala. Mar. 31, 2010). Given the foregoing, district courts have held—consistent with the finding in *Covington* that failure to comply with Section 1446(a) is a procedural defect—that an action is subject to remand where a plaintiff timely raises this procedural defect under Section 1447(c). *See City of Holly Springs v. Johnson & Johnson*, No. 21-246, 2022 WL 4287206, at *6 and n. 16 (N.D. Miss. Sept. 16, 2022) (distinguishing *Covington* and remanding action for failure to file "*any* orders with the removal notice, including the order they contend indicated the case had become removal"); *Kisor v. Collins*, 338 F. Supp. 2d 1279, 1281 (N.D. Ala. 2004) (distinguishing *Covington* given the timely motion to remand for failing to include state court "process" in its Notice of Removal, finding that to hold otherwise would be to conclude that "28 U.S.C. § 1447(c) is nothing more than a vehicle by which an unhappy plaintiff, who selected a presumptively competent state forum, can, at his option, warn the removing defendant who has woefully failed to dot his procedural i's and cross his procedural t's, to amend *post hoc* and post haste, so as to make everybody but the plaintiff happy."); *see also Pine Village N. Assoc. v. Fisher*, No. 21-2118, 2021 WL 5167736, at *2 (S.D. Tex. Sept. 28, 2021) (removal was improper where defendants "failed to attach copies of all process, pleadings, and orders as required by § 1446(a) when they filed their notice of removal").

Here, SLS failed to provide <u>any</u> records from the state court proceedings as an attachment to the Notice of Removal filed on November 14, 2022. (*See* R. Doc. 1). Plaintiffs

alerted SLS of this procedural defect by filing a timely Motion to Remand on December 7, 2022. (R. Doc. 49). SLS then waited an additional 20 days until December 27, 2022 before filing the state court record on which removal was premised (R. Doc. 48). SLS then amended the filed state court record the next day on December 28, 2022 (R. Doc. 51).[22]

There is no dispute that the removal was procedurally defective in light of SLS's failure to comply with the requirements of Section 1447(a). Nevertheless, this district has previously adopted the "predominant" approach in the wake of *Covington* is that the removing party's failure to file the required state court papers under Section 1447(a) is curable. *See Oldbear v. Kirby Inland Marine, Inc. of Louisiana*, No. 07-697, 2007 WL 9709974, at *2 (M.D. La. Oct. 30, 2007) (specifically rejecting approach taken by Northern District of Alabama in the *Kisoro* decision) (citing cases); *but see Slaughter v. Bd. of Supervisors of S. Univ. & A & M Coll.*, No. 07-379, 2007 WL 9709921, at *2 (M.D. La. June 20, 2007) ("[T]the failure to comply with that procedural requirement would not be grounds for remand, as the failure to attach a copy of 'all process, pleadings, and orders' under 28 U.S.C. § 1446(a) has been held not to be a jurisdictional defect *as long as sufficient documents are attached to show the basis for jurisdiction*.") (emphasis added) (citing *Covington*, 251 F.2d 933).

Having considered the record and procedural history of this action, the Court finds that SLS's procedural defect of failure to attach a copy of "all process, pleadings, and orders" under 28 U.S.C. § 1446(a) has been cured. *See Oldbear*, 2007 WL 9709974, at *2. While SLS could certainly have been more diligent in filing the required documents, the Court finds no prejudice

---

[22] Counsel for SLS certified that the attached state court pleadings and other documents constituted that entire state court record as of November 11, 2022 in Docket No. C-724405. In reply, Plaintiffs assert that SLS has still not provided the complete record, which would include documents filed in Docket No. C-656991 (i.e., the Executory Proceeding). (R. Doc. 57 at 6-11). For the purposes of resolving the instant Motion to Remand, the Court need not decide whether Docket No. C-656991 is part and parcel to this removed action for the purposes of 28 U.S.C. § 1446(a).

to Plaintiffs even though the state court record was not supplied within 30-days of service of the Petition. *See Flores v. Baldwin*, No. 01-2873, 2002 WL 1118504, at *4 (N.D. Tex. May 28, 2002) (finding no prejudice by "failure to attach all executed pleadings and orders lacking from the removal record" and that "this deficiency is not a basis for remand since the record may be easily supplemented to correct any remaining defects"); *see also Fiberco, Inc. v. Acadia Ins. Co.*, No. 22-00525, 2022 WL 16815126, at *2 (N.D. Tex. Nov. 7, 2022) (procedural defect of failing to attach a complete copy of the documents served on the removing defendants was cured when the removing defendants "expediently supplemented the missing documents").

### b. The Unanimity Requirement

Plaintiffs also argue that remand is merited because MERS, LSF10, and U.S. Bank did not join in or consent to removal. (R. Doc. 32 at 6).

The "rule of unanimity" has been codified in 28 U.S.C. § 1446. *See Penson Fin. Servs., Inc. v. Golden Summit Investors Grp., Ltd.*, No. 12-300, 2012 WL 2680667, at *5 (N.D. Tex. July 5, 2012). "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action to federal court." 28 U.S.C. § 1446(b)(2)(A). "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

If a served defendant did not join in the actual removal, "there must be some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action." *See Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1262 n.11 (5th Cir. 1988); *see also Crowley v. Amica Mut. Ins. Co.*, No. 12-775, 2012 WL

3901629 (E.D. La. Sept. 7, 2012) (noting that the recent amendments to the removal statutes do not affect the Fifth Circuit requirement of written consent by all defendants). This requirement is necessary to "'bind' the allegedly consenting defendant." *Getty Oil*, 841 F.2d at 1262 n.11.

Both LSF10 and U.S. Bank consented to removal within 30 days of removal. (*See* R. Docs. 28, 35, 38). Accordingly, Plaintiffs arguments are moot with respect to those defendants. The sole issue is whether MERS was required to consent to removal. SLS argues that MERS was not required to join in removal given that all of Plaintiffs' claims were dismissed against MERS, with prejudice, in *Berry I*. The Court agrees.

The Fifth Circuit has held that "nominal" or "formal" parties need not join in a removal. *Farias v. Bexa County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 871 (5th Cir. 1991) (citing *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1123 (5th Cir. 1987); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549–50 (5th Cir. 1981); *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen and Assistants' Local 349, Int'l Printing Pressmen and Assistants' Union of N. Am.*, 427 F.2d 325, 327 (5th Cir. 1970)). In order to establish that a defendant is nominal, "the removing party must show . . . that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court." *Id.* (quoting *B., Inc.*, 663 F.2d at 549). Accordingly, the nominal defendant doctrine "involves a test substantially similar to the test for improper joinder." *Chavez v. Goodyear Tire & Rubber Co.*, No. 17-00714, 2018 WL 501092, at *3 (E.D. Tex. Jan. 22, 2018) (quoting *Breitling v. LNV Corp.*, 86 F. Supp. 3d 564, 572 (N.D. Tex. 2015)); *see Porter v. Loney*, No. 16-00100, 2017 WL 2829650, at *1 (M.D. La. June 30, 2017) (noting similarity in tests between determining whether a party is nominal or improperly joined).

Plaintiffs cannot recover against MERS, which is a "nominal" party for the purposes of the rule of unanimity. That is because, as discussed in further detail below, Plaintiffs' claims

against MERS are subject to res judicata or otherwise are without merit. While MERS has not made an appearance in this action, the Court also finds it appropriate to dismiss all claims in this action against MERS, with prejudice, as discussed below.

**C.    Plaintiffs' Motion for Preliminary/Permanent Injunction (R. Doc. 42)**

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations and quotations omitted). *See also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief " is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors"); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a request for preliminary injunction is to be treated as the exception rather than the rule"). The decision whether to grant or deny a request for a preliminary injunction is within the sound discretion of the Court. *See Allied Mlttg. Grp., Inc.*, 878 F.2d at 809.

At all times, the burden of persuasion remains with the plaintiff as to each of the four elements. Specifically, a plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. *See Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 734 (5th Cir. 2008). If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits).

In support of their Motion for Preliminary/Permanent Injunction, Plaintiffs summarize their legal theory of recovery as follows:

> The Original Mortgage and note were deemed paid in full by the original lender. The original note was never sold, transferred, or assigned to LoanCity; therefore, Equifirst conferred ownership to the Berry's in 2006 because the original note and mortgage were deemed paid in full with nothing owing. . . . LoanCity did not work with Equifirst to obtain the original note and mortgage for the refinance of the original note and mortgage nor did not follow the UCC process put in place for Lost Note Affidavits hereby voiding their instruments as being facially invalid and therefore fraud on their face. The Plaintiffs are the sole owners of the property and [have] not had a legally binding note or mortgage since 2006. No one can refinance a note and mortgage without purchasing the original note and mortgage, and having it property conveyed according to UCC §§ 3 and 9. Loan Originators cannot misrepresent the contract as a "refinance" when it clearly did not purchase the instruments from Equifirst the Original Lender.

(R. Doc. 63 at 11). Given the foregoing, Plaintiffs seek a ruling (1) enjoining Defendants "from selling, attempting to sell, or causing to be sold the property, until this matter is fully adjudicated in a court of competent jurisdiction, and all the way to the US Supreme Court if necessary," (2) setting aside "the judgment dated April 13, 2017 as an absolute nullity," and (3) granting any "further relief that the court may deem just and equitable." (R. Doc. 63 at 15).

Having considered the record in its entirety, the Court concludes that Plaintiffs are not entitled to any preliminary injunctive relief sought by the instant motion. As discussed below, Plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, Plaintiffs have not established a substantial likelihood of prevailing on the merits necessary for the issuance of a preliminary injunction. Furthermore, the record indicates that prior to removal Plaintiffs sought and obtained from the state court judge a stay of the Executory Proceedings (Docket No. C-656991). (*See* R. Doc. 51-6). Defendants further represent that the "sheriff's sale has been canceled" in light of the instant action. (*See* R. Doc. 13-1 at 3; R. Doc. 40-1 at 3; R. Doc. 42-1 at 3; R. Doc. 46-1 at 3). Accordingly, Plaintiffs do not face a substantial threat of

irreparable injury if the injunction is not granted. For the foregoing reasons, the issuance of preliminary injunctive relief is without merit.

To the extent Plaintiffs seek permanent injunctive relief and declaratory relief through the instant motion, the Court finds that relief unavailable in light of the following analysis of Defendants' Motions to Dismiss.

### D.    Defendants' Motions to Dismiss (R. Docs. 13, 40, 42, 46)

#### 1.    Legal Standards

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[23] In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and

---

[23] To the extent Plaintiffs have made allegations of fraud, they are subject to the heightened pleading standard set out in Rule 9 of the Federal Rules of Civil Procedure. *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138-39 (5th Cir. 1992). Rule 9 requires a plaintiff who "alleg[es] fraud" to "state with particularity the circumstances constituting fraud . . .," but allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b). To meet this burden, a plaintiff must plead "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic*, 975 F.2d at 1139.

view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

In deciding a motion to dismiss, the Court may consider documents that are attached to the motion to dismiss as part of the pleadings if they refer to the Plaintiffs' complaint and are central to their claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th. Cir. 2004).

Furthermore, the Court may perform a review to determine whether the complaint should be dismissed as frivolous or malicious to the extent any named defendant has not expressly sought dismissal of Plaintiffs' claims. Plaintiffs' payment of the filing fee does not preclude this review. *See Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307-308 (1989) ("Statutory provisions may simply codify existing rights or powers. [28 U.S.C.] § 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); *see also Doe v. City of Baton Rouge*, No. 20-514, 2021 WL 304392, at *2 (M.D. La. Jan. 29, 2021) ("[R]egardless of whether Plaintiff were to pay the filing fee, this Court has the inherent power to screen a pleading for frivolousness."), *appeal dismissed*, No. 21-30061, 2022 WL 881753 (5th Cir. Mar. 24, 2022), *cert. denied sub nom. Doe v. City of Baton Rouge, Louisiana*, 143 S. Ct. 376 (2022).

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

### 2.    The General Allegations

In *Berry I*, Plaintiffs sought recovery based on legal theories that have been resoundingly rejected by federal courts across the country. Specifically, the bases for Plaintiffs' claims stemmed from the contention that their mortgage was improperly securitized and/or pooled, making any subsequent assignment invalid. However, neither theory has merit. *See*, *e.g.*, *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013) (discussing and rejecting the theory that a mortgage was allegedly "split" from the note through securitization, rendering the note unenforceable); *Marban v. PNC Mortg.*, No. 12-3952, 2013 WL 3356285, at *10 (N.D. Tex. July 3, 2013) (finding meritless the theory that any securitization of the loan rendered the note and accompanying deed of trust unenforceable and discharged a borrower's obligations under them); *Beebe v. Fed. Nat. Mortg. Ass'n*, No. 13-31, 2013 WL 3109787, at *2 (D. Nev. June 18, 2013) ("[t]he securitization argument has been repeatedly rejected . . . because it does not alter or change the legal beneficiary's standing to enforce the deed of trust"); *Henkels v. J.P. Morgan Chase*, No. 11-0299, 2011 WL 2357874, at *7 (D. Ariz. June 14, 2011) (rejecting claim "that securitization has had any impact on [plaintiff's] obligations under the loan" and noting that numerous courts have rejected similar claims). Accordingly, to the extent Plaintiffs are again raising these claims, their Petition is subject to dismissal for the same reasons provided in *Berry I. See Berry*, 2019 WL 4455998; *Berry*, 489 F. Supp. 3d at 449-454.

It appears, however, that Plaintiffs primarily (if not entirely) are re-asserting claims first raised in an Amended Petition filed in *Berry I*. As in that previous Amended Petition, Plaintiffs allege that the promissory note and mortgage issued by LoanCity on December 27, 2005 is invalid in light of the allegedly cancelled promissory note and mortgage issued by Equifirst, which were not sold, transferred, or assigned to anyone including LoanCity. (*See* Petition ¶ 21). In support of this allegation, Plaintiffs rely on an exhibit attached to the Petition (Exhibit 2 –

Equifirst's Affidavit of Lost Note and Authorization to Cancel Mortgage ("Lost Note Affidavit"). (R. Doc. 51-1 at 31-33). Plaintiffs allege that a "broken chain of title" results in their ownership of the property without a mortgage. (*See* R. Doc. 51-1 at 35).

In dismissing Plaintiffs' claims raised in the Amended Petition in *Berry I*, the district judge specifically took into account this very theory of recovery, concluding that it was frivolous:

> The Court notes that with regard to this new allegation that Defendants transferred a cancelled mortgage, Plaintiffs make copious allegations of various types of fraud, again seemingly trying to see what, if anything, will stick. Plaintiffs' diverse and multiple claims for different types of fraud, all of which are unfounded, suggest to the Court that Plaintiffs are simply making frivolous accusations rather than considered, legitimate arguments. However, in an abundance of caution, the Court will address each type alleged, in turn, below.

*Berry*, 489 F. Supp. 3d at 451. The district judge then specifically rejected all legal theories based on fraud raised with respect to the alleged fraudulent issuance of LoanCity's promissory note and mortgage, including theories of wire fraud under 18 U.S.C. § 1343, mortgage fraud under La. R.S. 14:71.3, fraudulent conveyance under La. R.S. 22:2021, and general fraud. *Id*. at 451-454.

As discussed below, Plaintiffs attempt to re-litigate these issues already decided in *Berry I* are barred by the doctrine of res judicata or otherwise fail to state a claim upon which relief can be granted. To the extent necessary, the Court has also addressed the specific causes of action raised in the instant Petition.

### 3.    Res Judicata

"As a matter of federal common law, federal courts sitting in diversity apply the preclusion law of the forum state unless it is incompatible with federal interests." *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (citing *Semtek Int'l Inc. v. Lockheed*

*Martin Corp.*, 531 U.S. 497, 508 (2001)). In determining whether a state court suit is precluded by res judicata, a Louisiana court would apply Louisiana Revised Statute 13:4231.

The Louisiana res judicata statute provides, in pertinent part, that "[i]f the [valid and final] judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action." La. R.S. 13:4231(2). "A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." La. R.S. 13:4231(3). "The four prerequisites for the application of res judicata under La. R.S. 13:4231 are: (1) the parties must be identical in both suits, or in privity; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases." *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1026 (5th Cir. 2012). Louisiana Revised Statute 13:4231 provides a broad application of res judicata to foster judicial efficiency and protect litigants from duplicative litigation." *Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 810 (5th Cir. 2000) (citations omitted).

Having considered the record, the Court concludes that the diverse defendants (Wells Fargo, MERS, SLS, Caliber, Fay Servicing, LSF10, and U.S. Bank) are entitled to dismissal of the claims brought against them based on res judicata.

First, there can be no dispute that Plaintiffs, Wells Fargo, and MERS were parties to both *Berry I* and this action.

A non-party is also in privity for the purpose of res judicata in three circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately

represented by a party to the original suit. *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th

Cir. 1990) (citing *Howell Hydrocarbons, supra*, 897 F.2d at 188; *Southwest Airlines, supra*, 546

F.2d at 95). Accordingly, the remaining non-diverse defendants (SLS, Caliber, Fay Servicing,

LSF10, and U.S. Bank) are in privity with the dismissed defendants in *Berry I* (Wells Fargo,

Freddie Mac, and MERS) given that they have been assigned rights and duties as servicers or are

holders of the same promissory note and mortgage as litigated in *Berry I. See Warren v. Mortg.*

*Elec. Registration Sys., Inc.*, 616 F. App'x 735, 737-38 (5th Cir. 2015).

Second, the Fifth Circuit has specifically stated that the district court had diversity

jurisdiction over *Berry I* and, therefore, was a court of competent jurisdiction for the purposes of

res judicata. *See Wicker v. Seterus, Inc*., No. 15-331, 2016 WL 2622017, at *6 (W.D. Tex. May

5, 2016) ("Because the district court in Wicker II had diversity jurisdiction, the prior judgment—

the dismissal of Plaintiff's claims with prejudice—was rendered in a court of competent

jurisdiction.").

Third, *Berry I* ended in a final judgment on the merits dismissing all claims against Wells

Fargo, MERS, and Freddie Mac with prejudice. *See Berry v. LoanCity*, 489 F. Supp. 3d 441.

These dismissals were affirmed on appeal. *See Berry*, 2022 WL 728969, *petition for certiorari*

*denied*, 2023 WL 3803962. A dismissal with prejudice is a final judgment for purposes of res

judicata. *See Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).

Finally, both *Berry I* and the instant lawsuit involve identical claims. Courts "apply a

transactional test to determine whether two suits involve the same claim or cause of action."

*Houston Pro. Towing Ass'n v. City of Houston*, 812 F.3d 442, 447 (5th Cir. 2016) (internal

quotations and citations omitted). The Fifth Circuit has defined this test as follows:

> The transactional test focuses on whether the two cases "are based on 'the same
> nucleus of operative facts.'" It is the "nucleus of operative facts, rather than the
> type of relief requested, substantive theories advanced, or types of rights asserted"

> that defines the claim. Indeed, [w]hat factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* (citations omitted). Because both *Berry I* and this action raise claims regarding the servicing of the promissory note and mortgage, as well as related foreclosure proceedings, they form the same transaction and same nucleus of operative facts for purposes of res judicata. *See*, *e.g.*, *Cuauhtli v. Chase Home Financie LLC*, 308 F. App'x 772, 774 (5th Cir. 2009) (husband's claims challenging foreclosure were barred by res judicata due to wife's previous lawsuit on same subject matter; court noted that "it is immaterial" that husband asserted new legal theories where both lawsuits arose from same nucleus of operative facts); *Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 214 (N.D. Tex. 2020) (finding prior lawsuits challenging lender's authority to enforce loan documents and current lawsuit seeking to rescind foreclosure involved the same claims for purposes of res judicata because they were based on the same nucleus of operative facts, sought "essentially the same relief," and current claims could have been brought in prior lawsuits). Plaintiffs have simply reiterated the dismissed claims in *Berry I* to see what claims "will stick" – these claims arise from the same transaction and nucleus of operative facts as those already litigated in *Berry I*.[24]

---

[24] Plaintiffs focus their instant allegations in this action on Equifirst's Lost Note Affidavit, which is attached to the Petition in this action. In affirming the dismissal of *Berry I*, the Fifth Circuit noted that Plaintiffs attempted to attach that document to its Amended Complaint but it was properly struck from the record as improperly filed. *Berry*, 2022 WL 728969, at *5. The Fifth Circuit noted, however, that assuming "arguendo that this document was properly submitted," it nevertheless would not support Plaintiffs' claims because although "the document states that a note and mortgage was paid in full, it seemingly refers to a different note than the one at issue here. The note referenced in the affidavit was issued in 2002 for an amount of $176,310; whereas the note at issue in the original petition was executed in 2005 for an amount of $184,000." *Id.* As discussed below, the Court concludes that the Equifirst note has no bearing on whether the Foreclosure Judgment, which concerned the LoanCity promissory note and mortgage on the Property, was proper.

For the foregoing reasons, Plaintiffs' claims in this action against the diverse defendants are subject to dismissal, with prejudice, on the basis of res judicata. To the extent necessary, however, the Court will consider the specific causes of action raised in the Petition.

### 4.    Plaintiffs' Individual Causes of Action

### a.    Lack of Standing/Wrongful Foreclosure

Count 1 in the Petition claims that no Defendant has standing to foreclose given their theory that the "original" promissory note and mortgage issued by Equifirst was never sold, assigned, or transferred to LoanCity. (Petition ¶¶ 40-45). There is no dispute that Wells Fargo initiated the underlying foreclosure proceedings.

"Although there is no statutory cause of action in Louisiana for wrongful seizure, damages for a wrongful seizure of property have long been available under Louisiana's tort law." *Bombet v. Donovan*, No. 13-118, 2015 WL 65255, at *8 (M.D. La. Jan. 5, 2015). However, "[b]ecause liability is tied to the act of unlawfully seizing another's property, the cause of action arises at the moment of the seizure." *Id.* (citing *Mariche v. Wells Fargo Bank, N.A.*, No. 11–1191, 2012 WL 1057626, at *3 (E.D. La. Mar. 28, 2012)).

As discussed above, the record indicates that prior to removal Plaintiffs sought and obtained from the state court judge a stay of the Executory Proceedings (Docket No. C-656991). (*See* R. Doc. 51-6). Defendants further represent that the "sheriff's sale has been canceled" in light of the instant action. (*See* R. Doc. 13-1 at 3; R. Doc. 40-1 at 3; R. Doc. 42-1 at 3; R. Doc. 46-1 at 3).

Given that there has been no seizure of the Property, there is no cause of action for wrongful seizure. Plaintiffs' prospective relief regarding any future seizure is injunctive in nature. Accordingly, this cause of action fails to state a claim upon which relief can be granted.

39

### b.      Breach of Fiduciary Duty

Count 2 in the Petition alleges that all Defendants breached an alleged fiduciary duty owed to Plaintiffs. (Petition ¶¶ 46-49). While Plaintiffs broadly allege these claims against all Defendants, it appears that the cause of action is primarily directed at the non-diverse defendants, Dean Morris and Couteau. The Court has discussed above that the duties of those defendants, absent some contractual agreement, are to their clients, not the Plaintiffs. A similar analysis holds true with respect to the remaining defendants.

Under Louisiana law, the "elements of a cause of action for a breach of fiduciary duty . . . are: (1) a breach by a fiduciary of an obligation to another; (2) a knowing collusion or participation in the breach by the fiduciary; and (3) damages suffered by another as a result of the breach." *Brockman v. Salt Lake Farm P'ship*, 768 So. 2d 836, 844 (La. App. 2d Cir. 2000), In order "for a fiduciary duty to exist, there must be a fiduciary relationship between the parties." *Scheffler v. Adams & Reese, LLP*, 950 So. 2d 641, 647 (La. 2007).

Absent unique circumstances not alleged in this case, mortgage lenders do not owe a fiduciary duty to their borrowers. *See*, *e.g.*, *FMB Development, L.L.C. v. Hibernia Nat. Bank*, 224 So. 3d 431, 439 (La. App. 4th Cir. 2017) ("There is no language in the Mortgage Contracts or in any other written agreement whereby Capital One specifically agreed to act and perform in the capacity as a fiduciary."). Indeed, the Louisiana Credit Agreement Statute bars any implied fiduciary duty claims absent a written agency or trust agreement:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties . . . unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.

La. R.S. 6:1124; *see Clarkston v. Allstate Insurance Company*, No. 06-4474, 2007 WL 128806 (E.D. La. Jan. 16, 2007) (dismissing fiduciary duty claim against Chase Home Finance, LLC); *Whitfield v. Countrywide Home Loans, Inc. et al*, No. 06-4166, 2007 WL 1200829, at *3-4 (E.D. La. April 23, 2007) (dismissing fiduciary duty claim against Countrywide Home Loans, Inc.); *Obioha v. Proctor Fin. Ins. Co.*, No. 06-5364, 2007 WL 2903227 (E.D. La. Oct. 2, 2007) (dismissing fiduciary duty claim against Novastar Mortgage, Inc.).

Here, Plaintiffs have not alleged the existence of any written agency or trust agreements with any Defendant that would establish a fiduciary duty. Accordingly, this cause of action fails to state a viable claim. *See Hancock Bank of La. v. 3429 H, LLC*, 184 So. 3d 274, 280 (La. App. 5th Cir. 2016) ("Schmidt did not allege in his reconventional demand that a written credit agreement existed. . . . Accordingly, there can be no cause of action . . . for a breach of fiduciary duty regarding the promissory note."); *see also Loraso v. JP Morgan Chase Bank, N.A.*, No. 13-4734, 2013 WL 5755638 (E.D. La. Oct. 23, 2013) ("Plaintiffs' failure to allege a written fiduciary agreement is fatal to their claim for breach of fiduciary duty.").

Plaintiffs' allegations regarding the existence of a fiduciary duty are conclusory at best. As such, this cause of action fails to state a claim upon which relief can be granted.

### c.     Quiet Title

Count 3 in the Petition seeks to "quiet title." (Petition ¶¶ 50-56). Plaintiffs bring a quiet title claim on the basis that "all Defendants . . . claim some estate, right, title, lien or interest in or to the property adverse to Plaintiffs" "without any right whatsoever" and "these claims constitute a cloud on Plaintiffs' title to the Real Property." (Petition ¶ 53). Plaintiffs ask the Court to issue a "decree permanently enjoin[ing] Defendants . . . from asserting any adverse claim to Plaintiffs' title to the property. (Petition ¶ 56).

Generally, "[a]n action to remove a cloud from title or to quiet title may be used by a person claiming ownership of immovable property or of a real right against another who has recorded an instrument which operates as a cloud on his title." *Spencer v. James*, 955 So. 2d 1287, 1292 (La. App. 2d Cir. 2007). "The requirements of the action to quiet title are: 1. Claim of ownership; 2. Existence of clouds; 3. Description of property; and 4. Prayer for cancellation of the clouds." *Harrison v. Alombro*, 341 So. 2d 1165 (La. App. 1st Cir. 1976). All four requirements must be met. *Spencer*, 955 So.2d at 1293 (citations omitted).

Here, Plaintiffs fail to provide sufficient facts to allege that a cloud exists on their title. "Generally, a cloud on title is produced by an invalid instrument or voidable conveyance that is associated with the title, and '[i]t is enough that the invalidity does not appear upon its [(the instruments')] face[.]'" *Jonalkar v. Wells Fargo Mortg., Inc.*, No. 12-216, 2012 WL 5364246, at *2 (M.D. La. Oct. 31, 2012) (quoting *Graves v. Ashburn*, 215 U.S. 331, 30 S. Ct. 108, 109 (1909)). "Furthermore, a cloud on title may exist when the title is unmerchantable or suggestive of litigation and 'questionable' as to whether there is a clear title." *Parker v. Machen*, 567 So. 2d 739, 743 (La. App. 2d Cir. 1990). Nevertheless, "theories of securitization, 'splitting the note', and lack of standing are not sufficient factual allegations to support a 'cloud on title.'" *Jonalkar*, 2012 WL 5364246, at *2.

At most, Plaintiffs allege, in a conclusory manner, that the Defendants lack any rights over the Property based on Plaintiffs' theory that Equifirst did not transfer any interest in the original promissory note and mortgage. As discussed above, this assertion is without merit. Plaintiffs' claims that the Defendants are without any legal rights based on the foregoing theory is conclusory at best and insufficient to state a plausible claim that a cloud exists on their title. Accordingly, this cause of action must be dismissed for failure to state a claim upon which relief can be granted.

### d.    Unconscionability of Contract

Count 4 in the Petition alleges "unconscionability of contract." (Petition ¶¶ 57-61).

Louisiana recognizes that certain contractual terms, especially when contained in dense standard

forms that are not negotiated, can be unconscionable and thus unenforceable. *See*, *e.g.*, *Iberia*

*Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004). The Louisiana

Consumer Credit Law specifically addresses unconscionability of contracts. *See* La R.S. 9:3551

("With respect to a consumer credit transaction, if the court as a matter of law finds the

agreement or any clause of the agreement to have been unconscionable at any time it was made

the court may refuse to enforce the agreement, or it may enforce the remainder of the agreement

without the unconscionable clause, or it may so limit the application of any unconscionable

clause as to avoid any unconscionable result."). Under the Louisiana Consumer Credit Law, "a

contract or clause is unconscionable when at the time the contract is entered into it is so onerous,

oppressive or one-sided that a reasonable man would not have freely given his consent to the

contract or clause thereof in question. . . ." La R.S. 9:3516(36).

The alleged "unconscionability" of a contract is a contract defense, not an affirmative

cause of action. *See Lafleur v. L. Offs. of Anthony G. Buzbee, P.C.*, 960 So. 2d 105, 112 (La.

App. 1st Cir. 2007) (listing fraud, duress, and unconscionability as contract defenses); *see also*

*Aetna Fin. Co. of Baton Rouge v. Perkins*, 448 So. 2d 121, 128 (La. App. 1st Cir. 1984) (finding

that the loan transactions were not unconscionable when the <u>defendants</u> did not "allege in their

pleadings or in brief that the terms of their loans are in violation of law"). Plaintiffs have not set

forth any decisional law allowing a plaintiff to affirmatively assert a cause of action for

"unconscionability of contract." This cause of action is subject to dismissal for that reason alone.

Furthermore, Plaintiffs did not allege any contract negotiations between themselves and

the Defendants sued in this action. At most, Plaintiffs allege that "[t]here are no UCC 1 Financial

Statements perfecting personal property interest in the Accommodated Mortgage" and "Defendants, by withholding such facts have potentially committed a grave error resulting in the breaking of the Chain of Title causing special damage." (Petition ¶¶ 59-60). This concerns the contract bargaining between Plaintiffs and LoanCity, not the current Defendants in this action. Plaintiffs do not allege any onerous, oppressive or one-sided contract negotiations or terms involving any entities or individuals, much less the actual Defendants in this action.

In sum, even if an affirmative cause of action for unconscionable contract exists under Louisiana law, Plaintiffs have failed to identify any unconscionable contract terms or negotiations involving the Defendants in this action. Therefore, this claim must be dismissed for failure to state a claim upon which relief can be granted.

### e.    Preliminary and Permanent Injunctive Relief

Count 5 of the Petition seeks injunctive relief preventing Defendants from continuing with the seizure and sale of the Property. (Petition ¶¶ 62-66). Having already denied preliminary injunctive relief above, the sole remaining issue is whether permanent injunctive relief is available.

"The defendant in the executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the security interest, mortgage, or privilege is extinguished, or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed." La. C.C.P. art. 2751.[25]

---

[25] As discussed above, Plaintiffs filed this separate action in state court seeking (in part) injunctive relief with respect to the seizure and sale of the Property, as allowed under Article 2752 of the Louisiana Code of Civil Procedure. That same procedure allowed Plaintiffs to seek injunctive relief in the Executory Proceeding itself, rather than through a separate lawsuit. *See* La. Code Civ. Proc. art. 2752 ("The petition for injunction shall be filed in the court where the executory proceeding is pending, either in the executory proceeding or in a separate suit.") (emphasis added). The Court does not reach the issue of whether, upon dismissal of this action, Plaintiffs can seek injunctive relief by filing an appropriate motion in the Executory Proceeding. *See McCain v. JP Morgan Mortg. Acquisition Corp.*, No. 20-987, 2021 WL 2002461, at *5 (E.D. La. May 19, 2021) (noting that the plaintiff's Motion for a Temporary Restraining Order and Request to Set Hearing for Preliminary Injunction, which sought a TRO or

Here, Plaintiffs seek injunctive relief based on the theory the Executory Proceeding is premised on an extinguished or otherwise legally unenforceable loan given that it was forgiven as a result of the Lost Note Affidavit. The district judge already addressed this issue in *Berry I*. *See Berry*, 489 F. Supp. 3d at 451. Again, the Lost Note Affidavit upon which Plaintiffs rely references a note in favor of Equifirst dated October 31, 2002. The Executory Proceeding is based on a promissory note originated on December 27, 2005 with LoanCity. The Fifth Circuit has recognized this distinction. *See Berry*, 2022 WL 728969, at *5. As discussed above, the Court concludes that the Equifirst note has no bearing on whether a foreclosure proceeding based on the later LoanCity promissory note and mortgage is proper.

For the foregoing reasons, this cause of action for preliminary and permanent injunctive relief is subject to dismissal for failure to state a claim upon which relief can be granted.

### f.    Declaratory Relief

Count 6 of the Petition seeks declaratory relief providing that "the title to the Subject Property is vested in Plaintiffs alone and that the Defendants be declared to have no interest estate, right, title, or interest in the subject property and that the Defendants, their agents and assigns, be forever enjoined form asserting any estate, rate title or interest in the Subject Property subject to Plaintiffs' rights." (Petition ¶¶ 67-70).

A request for a declaratory judgment need not be permitted if it adds nothing to the suit. *See Pan–Islamic Corp. v. Exxon Corp*., 632 F.2d 539, 546 (5th Cir. 1980). Here, the declarations sought by Plaintiffs are entirely derivative of their other claims; that is, their requests for declaratory judgment rely on the same arguments that the Court has already considered and rejected. Plaintiffs seek the same relief through declaratory judgment that they do through their

---

injunction against a sheriff's sale scheduled for the next day, was unsuccessful in the underlying executory proceeding).

other claims—namely, that the Court invalidate the promissory note and mortgage and conclude that Plaintiffs hold title to the Property. Plaintiffs' redundant declaratory judgment claims do not survive a Rule 12(b)(6) motion. *See Edwards v. U.S. Bank N.A.*, No. 15-02535, 2016 WL 4574585, at *6 (W.D. La. June 28, 2016) (dismissing cause of action for declaratory relief because it was duplicative of other claims); *Merritt Hawkins & Assocs., LLC v. Gresham*, No. 13-00312, 2014 WL 685557, at *3 (N.D. Tex. Feb. 21, 2014) ("In the Rule 12(b)(6) context, courts generally dismiss declaratory judgment claims seeking to resolve matters already pending before the court.").

g.    **Unfair and Deceptive Practices in Unauthorized Collections**

Count 7 in the Petition claims that Defendants violated the Louisiana Fair Debt Collection Practices Act. (Petition ¶¶ 71-73).[26] In support of this claim, Plaintiffs rely on a provision within Louisiana Consumer Credit Law providing that a creditor "shall not contact any person other than an extender of credit or credit reporting agency who is not living, residing, or present in the household of the debtor regarding the debtor's obligation to pay a debt." La R.S. 9:3562. Even assuming this statute applied to any of the Defendants, it only prohibits "creditors from communicating with *third-parties* about a debtor's obligation." *Saragusa v. Countrywide*, 2016 WL 1059004, at *5 (E.D. La. Mar. 17, 2016), *aff'd sub nom. Saragusa v. Countrywide Home Loans, Inc.*, 707 F. App'x 797 (5th Cir. 2017). Plaintiffs have not stated a cause of action under this statute because they have not alleged how the Defendants unlawfully communicated with anyone but them. *Id*.

---

[26] Plaintiff does not seek recovery under the federal Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*.

To the extent the conclusory allegations in support of this claim can be construed as addressing the Executory Proceedings, the claim is redundant and repetitive of other claims addressed elsewhere, including Plaintiffs' claim of wrongful foreclosure.

### h.    Executory Process Claims Have Been Abandoned

Count 8 in the Petition claims that the Executory Proceeding was abandoned in 2020 as a result of a demand that accelerated the indebtedness in 2017. (Petition ¶¶ 74-75).

The Louisiana Code of Civil Procedure provides that a lawsuit "is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years." La. C.C.P. art. 561. The Foreclosure Judgment (which is an order of seizure and sale) does not constitute a "final judgment" for the purposes of rendering an executory process complete and incapable of being abandoned. *Countrywide Home Loans, Inc. v. Est. of Rowe*, 224 So. 3d 1152, 1157 (La. App. 2d Cir. 2017).[27] In an executory proceeding, the "true judgment" is "actually the confession of judgment, not the order of seizure and sale, and that as a practical matter the executory proceeding is not complete until there is a sale." *Id*.

Nevertheless, Plaintiffs cannot state a claim of abandonment under Louisiana law. The Foreclosure Judgment was issued on April 13, 2017. *See* R. Doc. 51-1 at 28-29). Defendants represent that that the following actions took place in the Executory Proceeding: a Motion and Order to Substitute Party Plaintiff was filed on April 23, 2018; a Motion and Order to Appoint Curator Ad Hoc was filed on July 18, 2018; and the Curator's Answer was filed on October 1, 2018. (*See* R. Doc. 13-1 at 13-14; R. Doc. 40-1 at 20). Furthermore, Defendants represent that on May 26, 2021, Plaintiffs' First Request for Admissions, Interrogatories and Requests for

---

[27] Some Louisiana courts, however, have considered a foreclosure judgment (i.e., an order of seizure and sale) a "judgment" for the purposes of res judicata. *See Countrywide Home Loans Servicing, LP v. Thomas*, 113 So. 3d 355, 258, *writ denied*, 118 So. 3d 397 (La. 2013); *but see Nationstar Mortg., LLC v. Harris*, 141 So. 3d 829, 834 (La. App. 4th Cir. 2014) ("[T]he true judgment in an executory proceeding is not the order of seizure and sale; rather, it is the debtor's confession of judgment in the mortgage.").

Production of Documents and Things was served on the Plaintiffs and Curator in the Executory Proceeding. (*See* R. Doc. 13-1 at 14; R. Doc. 40-1 at 20). Finally, Defendants represent that on August 25, 2022, a Motion and Order to Substitute Party Plaintiff was filed in the Executory Proceeding. (*See* R. Doc. 13-1 at 14; R. Doc. 40-1 at 20). These affirmative acts (including the discovery) would have also interrupted the instant claim of abandonment in the Executory Proceeding. *See* La. C.C.P. art 561B ("Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.").

The Court further notes that Plaintiffs filed a separate state court action on or about August 20, 2018 (Docket No. C-672792) that was ultimately removed as *Berry I* on October 5, 2018. *See Berry I*, ECF No. 1 and No. 1-2 at 51-63. Through that action, Plaintiffs sought injunctive and declaratory relief with respect to any foreclosure or attempt to foreclose on the Property. That action was litigated by Plaintiffs until the U.S. Supreme Court denied their petition for certiorari was denied in 2023. *See Berry*, 2022 WL 728969, *petition for certiorari denied*, 2023 WL 3803962 (U.S. June 5, 2023). Furthermore, the Executory Proceeding was placed on hold in light of Plaintiffs' Chapter 13 bankruptcy filing on October 30, 2018 that was dismissed on December 16, 2018. *See In re Berry*, No 10-11227 (Bankr. M.D. La.).

For the foregoing reasons, Plaintiffs' claim of abandonment is without merit, and must be dismissed.

### i.    Unfair and Deceptive Consumer Practices with Respect to Loan Servicing

Count 9 in the Petition claims that Defendants falsified documents in violation of Louisiana's Unfair and Deceptive Consumer Practices Act ("LUPTA") with respect to loan servicing. (Petition ¶¶ 77-82). As an initial matter, Wells Fargo, as a federally insured lending

institution, is exempt under LUPTA. *See* La. R.S. 51:1406(a); *see also Truong*, 717 F.3d at 387
(Wells Fargo is exempt from liability under LUPTA); *Melancon v. Countrywide Bank*, No. 10-
1723, 2011 WL 692051, at *8 (E.D. La. Feb. 18, 2011) (same).

In addition, LUPTA provides that an action brought under its sections "shall be
prescribed by one year running from the time of the transaction or act which gave rise to this
right of action." La. R.S. 51:1409(E). "Louisiana courts have consistently held that LUTPA's
one-year limitation period is peremptive, rather than prescriptive, in nature." *Melancon*, 2011
WL 692051, at *8 (citing *Tubos de Acero de Mexico v. American International Investment
Corp., Inc.,* 292 F.3d 471, 481 n. 4 (5th Cir. 2002)). A peremptive period, such as the one in
LUPTA, is not subject to suspension, interruption, or renunciation and is not subject to the
doctrine of *contra non valentum,* which suspends the running of prescription when the cause of
action is not known or reasonably knowable by the plaintiff." *Melancon*, 2011 WL 692051, at *8
(citing *State Through Div. of Admin. v. McInnis Bros. Const*., 701 So. 2d 937, 939 (La. 1997)).

Plaintiffs filed this lawsuit on October 7, 2022. The allegations regarding LUPTA are
related to the initiation of the Executory Proceeding in 2017, or the servicing of the loans prior to
the initiation of those proceedings. Plaintiffs specifically allege that Dean Morris and Courteau,
on behalf of Wells Fargo and Freddie Mac, submitted "[f]alsified documents" to obtain the
Foreclosure Judgment. (Petition ¶ 79). These allegations—which have no bearing on the other
Defendants in this action—underscore that Plaintiffs' LUPTA allegations must be dismissed in
light of the 1-year perceptive period.

### j.  Fraud

Count 10 in the Petition seeks recovery based on fraud. (Petition ¶¶ 83-86). As discussed
above, Plaintiffs' entire theory of recovery is that the promissory note and mortgage subject to
the Executory Proceeding are invalid in light of Equifirst's cancelled promissory note and

mortgage. Plaintiffs' allegations regarding fraud, which are premised on this theory, have no basis in law or fact.

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La C.C. art. 1953; *Vance v. Fannie Mae*, 235 So. 3d 1263, 1269 (La. App. 5th Cir. 2017). " The elements of fraud include: 1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *see also Wilson v. GMFS LLC*, No. 18-840, 2019 WL 8301667, at *5 (M.D. La. May 24, 2019) ("To establish fraud, Plaintiff was required to allege that there was a misrepresentation of a material fact, made with the intent to deceive, which caused justifiable reliance with resultant injury.") (citing *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999)).

The Federal Rules of Civil Procedure requires that the circumstances constituting fraud be pled with "particularity." Fed. R. Civ. P. 9(b). Under this "particularity" requirement, "the party asserting the fraud claim must allege 'the existence of acts and circumstances sufficient to warrant the pleaded conclusion that fraud ha[s] occurred." *Bradford v. L. Firm of Gauthier, Houghtaling & Williams, LLP*, No. 13-2407, 2013 WL 6279687, at *4 (E.D. La. Dec. 4, 2013) (quoting *In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994)). Pleading fraud with particularity requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams*, 112 F.3d at 177 (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). Thus, "[a]t a minimum, Rule 9 requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *Bradford*, 2013 WL 6279687, at *4 (quoting *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)) (internal quotations

50

omitted). However, the defendant's state of mind, including malice, intent, and knowledge, may be generally averred *Id.*

Here, the Court finds that Plaintiffs have failed to plead their claim of fraud with the requisite specificity or particularity. Plaintiffs do not allege the time, place, or contents of any false representations made. At most, Plaintiffs reiterate their general theory stated above—that the Equifirst promissory note and mortgage has been cancelled—in support of the sole substantive paragraph alleging fraud:

> [A]ccording to the evidence the original note and mortgage by Equifirst were cancelled and not sold, transferred or assigned to anyone including LoanCity. As such the LoanCity instruments are fraud on their face. Wells Fargo and MERS revived a dead company LoanCity in 2012 to transfer nonexistent rights of LoanCity. There are no endorsements on the Promissory Note and the Note submitted by Ms. Courteau and Dean Morris do not bear the "Certified as True" mark as required by the Rules of Evidence. The documents were used to assert the false claim of ownership by the defendants Wells Fargo, Freddie Mac Multiclass Series 3113, SLS, USBT, Lsf10MH, Caliber, Fay, Dean Morris, and Ms. Courteau are misrepresentation of material fact, made with the intent to deceive to wrongfully foreclose on the subject property.

(Petition ¶ 85). These allegations are insufficient. The allegations merely restate Plaintiffs' theories—which have already been rejected in the context of other alleged causes of action—that the LoanCity promissory note and mortgage, which are the subject of the Executory Proceeding and Foreclosure Judgment, are invalid because they were not assigned to LoanCity by Equifirst.

For the foregoing reasons, Plaintiffs have failed to allege a valid claim of fraud against any Defendant.

### E.    Denial of Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure "requires the trial court to grant leave to amend freely," and "the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (internal citations omitted). However, "leave to amend is in no way automatic, but the district court must possess a

'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Jones*, 427 F.3d at 994. (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. & Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." (citation and internal quotation marks omitted).

*Id.*, 751 F.3d at 378.

In addition, the Fifth Circuit has made clear that "denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Boggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Here, it is not proper to provide Plaintiffs what would effectively be a fourth opportunity before this Court to raise allegations with respect to the validity of the LoanCity promissory note and mortgage. Plaintiffs were already provided the opportunity to amend their pleading in *Berry I*. The Amended Petition in *Berry I* largely raised the same legal theories now before the Court. Under these circumstances, it is a proper exercise of discretion to deny Plaintiffs another chance to amend their pleadings.

### III.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiffs' Motion to Remand (R. Doc. 32) be **GRANTED**, and the action be **REMANDED** to the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.

In the alternative, if Plaintiffs' Motion to Remand (R. Doc. 32) be denied by the District Judge,

**IT IS RECOMMENDED** that Plaintiffs' Motion for Declaratory Relief and Preliminary Injunction (R. Doc. 63) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Defendants' Motions to Dismiss (R. Docs. 13, 40, 42, 46) be **GRANTED**, and that Plaintiffs' claims be **DISMISSED WITHOUT PREJUDICE** with respect to Dean Morris and Courteau and **DISMISSED WITH PREJUDICE** with respect to Wells Fargo, MERS, SLS, Caliber, Fay Servicing, LSF10, and U.S. Bank.

Signed in Baton Rouge, Louisiana, on July 26, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**